IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| G. RALPH ELLIOTT, | : |
| | : Case No. 2:17-CV-42 |
| Plaintiff, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge |
| FIRST FEDERAL COMMUNITY | : Elizabeth Preston Deavers |
| BANK OF BUCYRUS, | : |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before the Court on the parties' cross-Motions for Summary Judgment. (ECF Nos. 72, 73). For the reasons below, Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

### I. BACKGROUND

Plaintiff brought this suit alleging a violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1639c, § 1640, and common law negligence. Both Plaintiff and Defendant, First Federal Community Bank of Bucyrus ("the Bank"), have filed Motions for Summary Judgment.

Plaintiff G. Ralph Elliott worked for 30 years as a realtor in the Marysville, Ohio area. (ECF No. 34 at 8) (hereafter "Elliott Deposition"). Every three years, he completed 30 hours of continuing education to maintain his license. (*Id*. at 9:4). Plaintiff was previously married to Virginia Golan Elliott, who is also a realtor. Ms. Golan is a third-party defendant in this case but is not party to the instant Motion. Plaintiff and his former spouse marketed themselves as "the Elliott Team" and had two realtors and two support staff in the office. (*Id*. at 13:12-20). Although Plaintiff is now in his eighties, he is a repeat player in the field of real estate and mortgages, and a consumer of above-average sophistication.

In 2013, Plaintiff and Ms. Golan, then married, refinanced the mortgage on their 26-acre property on Maple Ridge Road. This is the property at issue here. The Elliotts worked with Defendant Bank on this refinancing. (*Id.* at 23:7-18). Eighteen months after this refinancing, the Elliotts decided to separate. They agreed upon an asset and debt distribution plan. (ECF No. 73, Ex. 4). Plaintiff would live on Maple Ridge Road. (ECF No. 73, Ex. 4). Ms. Golan would live in a property on Restoration Drive. (*Id.*). As part of the separation, she would assume the mortgage on this property herself and Plaintiff would not be responsible for the debt associated with the Restoration Drive property. (*Id.*). The separation agreement also provided for Ms. Golan to pay Plaintiff spousal support in the amount of $2,200.00 per month. (*Id.*).

In 2014, about eighteen months after the Elliotts refinanced their loan with the Bank, Plaintiff Elliott, now separated, again requested to refinance the mortgage on the Maple Ridge Road property. He hoped to place the property in his name only, pursuant to the separation agreement. (ECF No. 73 at 5). Plaintiff completed a loan application with the following information: he had a base income of $528.95 per month, spousal support of $2,300.00 per month, social security of $1,975.00 per month, and rental income of $1,400.00 per month. (ECF No. 46). Plaintiff reviewed and signed the loan application. (Elliott Deposition at 40:12-20).

Defendant Bank attempted to separate the debts of Plaintiff and Ms. Golan to calculate accurately his finances for the new loan. Relying on the representations of Plaintiff and Ms. Golan, and on the Separation Agreement, the Bank did not consider as Plaintiff's debt Ms. Golan's mortgage for the Restoration Drive property. (ECF No. 47 at 33) (hereafter "Savidge Deposition"). The Bank's loan committee initially denied the refinancing request. (ECF No. 73, Ex. A). Ms. Golan then approached the loan officer at the Bank to ask if the Bank would reconsider. (*Id.*). Ms. Golan reassured the Bank she was committed to the separation agreement

by which she would pay Plaintiff spousal support sufficient to pay the mortgage. (*Id*.). The Elliotts had been good customers of the Bank and at that time had never missed a payment. (*Id*.). The loan officer with whom Ms. Golan spoke later scheduled a meeting with the Vice President of the Bank to ask him to reconsider, relaying his conversation with Ms. Golan. (*Id*.).

With the information from Ms. Golan about Plaintiff's income and the details of the separation agreement, the Bank understood that Plaintiff's finances were within the range for the Bank to refinance the loan. His debt-to-income ratio was below the 40% threshold and his credit score was at the bank's threshold of 660. (*Id*.). For these figures, the Bank relied on the representations of both Plaintiff and Ms. Golan and worked with their tax returns – even though those were joint returns filed while the pair were married and required reliance on outside information, such as how much Plaintiff would continue to earn from Ms. Golan's realty office. Because the Elliotts had been good customers, the Bank also waived other fees associated with the refinancing and did not reappraise the property, because these processes had just been done for the 2013 refinancing. (Savidge Deposition at 38).

After Plaintiff's mortgage was refinanced, the relationship between Plaintiff and Ms. Golan apparently deteriorated. In divorce proceedings, including a lengthy trial in the Union County Court of Common Pleas, their property and debts were re-divided, and Plaintiff was now ordered to receive $250.00 per month in spousal support. (ECF No. 73, Ex. F). Plaintiff was also fired from his job at Ms. Golan's office. With the loss of income both from spousal support and from his job, in addition to the debts incurred during the divorce proceedings, Plaintiff fell behind on his mortgage payments to Defendant Bank. He was sent notice of his duty to pay, at which point he brought his suit. (ECF No. 73, Ex. L).

3

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to

make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

### III. ANALYSIS

### A. Truth in Lending Act

Plaintiff alleges violations of the Truth in Lending Act. Defendant's Motion for Summary Judgment is granted because there can be no genuine dispute of material fact that the Bank acted in compliance with their statutory obligations. 15 U.S.C. § 1639c(a)(1) requires:

> In accordance with regulations prescribed by the Bureau, no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms, and all applicable taxes, insurance (including mortgage guarantee insurance), and assessments.

Plaintiff argues that the Bank failed to make a "reasonable and good faith determination based on verified and documented information" that he had a "reasonable ability to repay the loan" but there can be no genuine dispute that the Bank did just this. Bradley Murtiff was the Bank's Vice President in 2014 when Plaintiff was refinancing his loan. Mr. Murtiff averred that he was "not aware of any information/documents that were available that the bank has not obtained." (ECF No. 73, Ex. A at ¶ 15). The record in this case indicates the Bank did its due diligence to confirm Plaintiff would have the ability to make the payments on his mortgage. At the time of refinancing, Plaintiff was a good customer who had not missed a payment, and the data the Bank had indicated he was a customer with the financial standing to allow for the refinancing. The fact that Plaintiff and Ms. Golan did not keep the separation agreement and instead opted to divorce –

a series of events which reduced Plaintiff's income by an order of magnitude – was not an event that was reasonably foreseeable to the Bank.

Plaintiff may be unable to make his payments at this time. Though this is an unfortunate outcome, it is not the responsibility of the Bank, which met its statutory obligations.

## B. Appendix Q

In his Motion for Summary Judgment, Plaintiff argues Defendant Bank approved his refinance in violation of "Regulation Q." (ECF No. 72 at 7). Counsel raised this issue at oral argument as well. In the colloquial, "Regulation Q" appears to be about the interest banks can charge on deposit accounts. However, "Appendix Q" is an appendix to the regulations that implement the Truth in Lending Act. 12 C.F.R. § 1026. Because Counsel included the regulations from Appendix Q in his Motion for Summary Judgment (ECF No. 72, Ex. 3) and because Appendix Q is relevant here, this Court considered the parties' arguments on the subject of Appendix Q, not Regulation Q.

The full title of Appendix Q is "Appendix Q to Part 1026 – Standards for Determining Monthly Debt and Income." The thrust of Plaintiff's argument seems to be that Defendant Bank did not abide by these regulations when determining Plaintiff's income and debt for the purpose of the 2014 refinance. In their brief and again at oral argument, the Bank insisted they had abided by these regulations.

Appendix Q outlines how a lender may determine the income and debt of a potential debtor. The regulations which Appendix Q supplements "provides that, to satisfy the requirements for a qualified mortgage…the ratio of the consumer's total monthly debt payments to total monthly income at the time of consummation cannot exceed 43 percent." 12 C.F.R. § 1026.43(e)(2)(vi). Defendant Bank notes that per Plaintiff's loan application, his debt-to-income

ratio was 37.367%. (ECF No. 73 at 7). The Bank identified two additional relevant limits besides those in Appendix Q: the "40% threshold at the time" and the "current 38% limit." (*Id.*). By any of these measures, Plaintiff qualified for this mortgage and the Bank did its due diligence as required.

Plaintiff argues it was inappropriate, under Appendix Q, for the Bank to consider as Plaintiff's income the spousal support he would be receiving from Ms. Golan pursuant to the separation agreement. (ECF No. 72 at 7). Plaintiff also contests the Bank's determination of his rental income. These arguments are exactly precluded by the text of Appendix Q, however, which states: "Alimony, child support, or maintenance income may be considered effective if the consumer provides the required documentation, which includes a copy of the legal separation agreement." § II.A.2.ii. The regulation further provides that the consumer will need to "provide acceptable evidence that payments have been received during the last 12 months, such as tax returns," § II.A.3.iii, but notes that "periods less than 12 months may be acceptable provided the creditor can adequately document the payer's ability and willingness to make timely payments." *Id*. at n.i. The separation agreement, combined with Ms. Golan's representations to the Bank, constitute compliance with these portions of Appendix Q.

In addition, § D discusses the procedure for calculating the consumer's income from rental payments. The Bank reviewed Plaintiff's tax returns, which "also confirmed he had received rental income in the past," and reviewed a then-current lease which "shows that in March of 2014, Mr. Elliott entered a one-year lease, leasing a portion of his premises for $1,000/month." (ECF No. 73 at 9). The Bank had this information available when it made its refinancing decisions – indeed, that is why the Bank is now able, in its briefing, precisely to identify Plaintiff's credit score and debt-to-income ratio. Plaintiff's arguments that the Bank did

not comply with Appendix Q are unavailing. There can be no genuine dispute of these material fact, and summary judgment is proper.

## C. Negligence

Defendant's Motion for Summary Judgment is also granted as to Plaintiff's claim of negligence. Under Ohio law, relationships governed by contract law cannot also be governed by tort law. *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145, 146 (1922). Because this is unquestionably a relationship governed by contract, there is no genuine dispute of material fact that Plaintiff cannot maintain a claim of negligence. An exception to the rule in *Ketcham* is where "a special or fiduciary relationship exists between the parties and imposes a duty of good faith" – in these circumstances, a party can bring a claim for a tort even though the relationship was governed by contract. *Empire-Detroit Steel Div. Cyclops Corp. v. Pennsylvania Elec. Coil, Inc.,* 1992 WL 173313 at *3 (Ohio Ct. App. 1992). Plaintiff here has alleged no such "special or fiduciary relationship" and indeed, Defendant did not owe Plaintiff a duty beyond those enshrined in the contractual relationship. There is no genuine dispute of material fact.

## D. Foreclosure

Defendant requests this Court award certain specific remedies to Defendant for Plaintiff's breach of contract – namely, defaulting on his mortgage. Because there is no genuine dispute that Defendant complied with its statutory obligations, this Court grants Defendant's Motion. Specifically, this Court **Orders** judgment shall be entered for Defendant and against Plaintiff for:

1. Breach of contract, in the appropriate amount, plus court costs, accruing interest, default interest, statutory interest after judgment, costs and expenses for protecting and maintaining the collateral property; all costs, fees, and expenses incurred by Defendant for pursuing collection because of Plaintiff's default including, but not limited to, attorney's fees and expenses; and all fees and expenses incurred by Defendant in the sale of the property; and

2. Foreclosure on the Maple Ridge Road property and all costs, fees, and expenses incurred by Defendant in pursuing collection because of Plaintiff's default, including but not limited to attorney's fees and expenses; and all fees and expenses incurred by Defendant in the sale of the property.

Further, this Court hereby **Declares**:

1. the mortgage lien created by the loan documents Plaintiff concluded with Defendant constitutes a valid and enforceable lien against the Maple Ridge Road property to secure the entire amount due and payable to Defendant; and
2. the mortgage and lien against the Maple Ridge Road property be foreclosed against Plaintiff and any and all persons claiming from, under or through him; and that Plaintiff be forever barred and foreclosed of all right, title, interest, estate, or equity or right of redemption in or to the property.

This Court enters judgment and Decree of Foreclosure and allows Defendant to exercise any and all rights of foreclosure under applicable law against the Maple Ridge Road property and that this property be sold either by private sale or by the appropriate Federal or State official in the manner provided by law, without relief from valuation or appraisement laws. The proceeds of any such sale shall be applied to: (1) the court costs and sale expenses; (2) Union County Treasurer; (3) transfer taxes or fees; (4) satisfaction of Defendant's judgments entered in this action.

## IV. CONCLUSION

For the foregoing reasons, there is no genuine dispute of material fact. Defendant's Motion is **GRANTED**. As enumerated above, judgment is entered for Defendant.

**IT IS SO ORDERED.**

                                              s/Algenon L. Marbley
                                          **ALGENON L. MARBLEY**
                                          **UNITED STATES DISTRICT JUDGE**

**DATED: March 26, 2019**